WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Koegel,<br><br>          Plaintiff,<br><br>v.<br><br>Keith Fronk, et al.,<br><br>          Defendants. | No. CV-24-03484-PHX-SHD<br><br>**ORDER** |

Pending before the Court are Defendants' Motion to Transfer to the Northern District of Texas or in the Alternative, Dismiss, (Doc. 8), Plaintiff Peter Koegel's Motion for leave to Amend Complaint, (Doc. 15), and Koegel's Motion for Protective Order, (Doc. 16). For the reasons explained below, Defendants' Motion (Doc. 8) is **granted** and Koegel's Motions (Docs. 15 and 16) are **denied**.

## I.     FACTUAL BACKGROUND

Koegel is a software developer and business owner who resides in Arizona. (Doc. 1-1 at 6 ¶ 4.) Defendants are comprised of individuals, companies, and related entities that primarily engage in business in the oil, fuel, leasing, and real estate sectors. (*Id.* ¶ 5(a).) The Complaint does not allege that any of the Defendants reside in or are headquartered in Arizona. (*Id.* at 6–8 ¶ 5(b)–(k).) Additionally, the Complaint makes only three conclusory allegations concerning Defendants' ties to Arizona: (1) Fronk Oil Co., Inc. has "operations and business activities that extend into Arizona," (*id.* at 6 ¶ 5(b)); (2) Frong Oil. Co., Inc. WH1 has "operations and business activities that extend into Arizona," (*id.* ¶ 5(c)); and (3)

"Defendants have substantial contacts within the State of Arizona and conduct regular business activities in Arizona," (*id.* at 9 ¶ 7).

In 2017, Koegel, as part of non-party XOffice LLC, entered a contract (the "Contract") with Defendants to provide them software to assist with fuel distribution management, inventory tracking, and financial system management for each of the defendant entities. (*Id.* ¶ 9.) At some point, Defendant Keith Fronk cancelled the contract without warning or justification, ending the project before the software's implementation could be completed, thereby harming Koegel. (*Id.* at 11 ¶ 11.) Keith Fronk initiated arbitration against Koegel and obtained an award in Fronk's favor. (*Id.* at 12–13 ¶¶ 14–17.) Koegel alleges that Defendants' conduct during software implementation and their termination of the Contract give rise to the claims asserted in the Complaint. (*Id.* at 13–52.)

## II.    PROCEDURAL BACKGROUND

On November 8, 2024, Koegel filed this lawsuit against Defendants in the Superior Court of Arizona in and for Maricopa County, asserting seventeen causes of action against them for which he seeks $40 million in damages. (Doc. 1-1 at 4, 60 ("Amount claimed $40,000,000.00").) Defendants timely removed the matter to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1.)

On December 13, Defendants filed their Motion to Transfer to the Northern District of Texas (Amarillo Division) or in the Alternative Dismiss Under Rules 12(b)(2) and 12(b)(6) (Doc. 8) ("Motion to Dismiss"). Koegel responded, (Doc. 12), and Defendants replied, (Doc. 14).

While the Motion to Dismiss was fully briefed and pending, Koegel filed two additional motions. On January 8, 2025, he filed a Motion for Leave to Amend Complaint, (Doc 15), to which Defendants responded, (Doc. 17), but Koegel did not reply. Additionally, on January 17, 2025, he filed a Motion for Protective Order, (Doc. 16), to which Defendants responded, (Doc. 18), to which he did not reply.

## III. DEFENDANTS' MOTION TO DISMISS

In their Motion to Dismiss, Defendants moved to transfer venue to the Northern District of Texas and argued, in the alternative, for dismissal under Rule 12(b)(2) and -(b)(6). Because this case will be dismissed for lack of personal jurisdiction under Rule 12(b)(2), Defendants' arguments for transfer and dismissal for failure to state a claim will not be addressed.

### A. Legal Standard

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (quotation marks omitted). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). However, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (citation omitted). "In this context, a 'prima facie' showing means that [a plaintiff must produce] admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction." *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1107 (C.D. Cal. 1999) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203–04 (5th Cir. 1989)); *cf. AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020) ("[D]isputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction . . . ." (citation omitted)), *overruled on other grounds by Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025).[1]

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "Arizona law permits the

---

[1] In determining whether personal jurisdiction exists, a court may consider affidavits or written materials. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Here, neither party supplies any affidavits; rather, both parties largely rely on bald, unsupported assertions in their papers to dispute each other's version of the jurisdictional facts. Defendants, however, supplied a copy of the Contract, (Doc. 14-1), which the Court will consider.

exercise of personal jurisdiction to the extent permitted under the United States Constitution." *Id.* (citing Ariz. R. Civ. P. 4.2(a)). Accordingly, whether this Court has "personal jurisdiction over Defendants is subject to the terms of the Due Process Clause of the Fourteenth Amendment." *Id.*

"Constitutional due process requires that defendants have certain minimum contacts with a forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quotation marks omitted). Minimum contacts exist "if the defendant has continuous and systematic general business contacts with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Id.* at 1142 (quotation marks omitted). "In giving content to that formulation, [courts have] long focused on the nature and extent of the defendant's relationship to the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quotation marks omitted).

Courts have specific jurisdiction over a nonresident defendant if three requirements are met:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotation marks and citation omitted). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). "Two principles animate the 'defendant-focused' inquiry." *Id.* "First, the relationship between the nonresident defendant, the forum, and the litigation 'must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* (quoting *Walden*, 571 U.S. at 284). Second, "the minimum contacts analysis examines 'the

defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Id.* "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* Put another way, "a plaintiff's contacts with the forum State cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Walden*, 571 U.S. at 279 (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

### B.  Discussion

In his Response to the Motion to Dismiss, (Doc. 14), Koegel effectively concedes this Court lacks general jurisdiction over Defendants because he argues only that specific jurisdiction exists. (Doc. 12 at 10–11). Thus, whether the Court has personal jurisdiction over Defendants turns on whether there is specific jurisdiction under the minimum contacts test. Citing *Walden*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), and *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997), Koegel argues that Defendants had sufficient contacts with Arizona to establish specific jurisdiction for two reasons: (1) they entered into a contract and did business with an Arizona resident, and (2) they initiated and participated in arbitration proceedings in Arizona. The Court addresses each argument in turn.

### 1.  Contracting with an Arizona Resident

A "contract with an out-of-state party *alone* [cannot] . . . establish sufficient minimum contacts in the other party's home forum." *Burger King*, 471 U.S. at 478; *see also Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) ("A contract alone does not automatically establish minimum contacts in the plaintiff's home forum." (*citing Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008)) (citation modified)). Rather, a defendant must establish minimum contacts by "some type of affirmative conduct which allows or promotes the transaction of business within the forum state," *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (citation omitted), and in the context of a contractual relationship, courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," *Burger King*,

471 U.S. at 479. If the contractual relationship demonstrates that a defendant had "a *substantial* connection" with the forum state, the defendant cannot argue that its relationship to that state is "random, fortuitous, or attenuated." *Id.* at 479–80 (quotation marks omitted).

Koegel argues that Defendants established minimum contacts with Arizona because they "contracted with [him], an Arizona-based programmer, fully aware that all programming work would be conducted in Arizona" and "deliberately established substantial contacts with Arizona through their business relationship with [him]." (Doc. 12 at 2). He also asserts that Defendants "deliberately initiated substantial activities within Arizona's jurisdiction, including soliciting demonstrations and contractual negotiations connected to the Arizona market," (*id.*), as well as by "engaging in regular video conferences and communications directed to Arizona [and] transmitting payments to Arizona," (*id.* at 3).

This argument fails at the initial "purposeful availment" step of the specific jurisdiction analysis. Aside from Koegel's assertion that Defendants contracted with and did business with an Arizona-based programmer, his other assertions are neither set forth in the Complaint nor supported by any affidavits, written materials, or other admissible evidence. A "[p]laintiff bears the burden to produce admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction." *Clair v. iEnergizer, Inc.*, 2021 WL 3082562, at *5 (D. Nev. 2021) (internal quotation marks and citation omitted); *see also AMA Multimedia*, 970 F.3d at 1207 (noting that to satisfy its burden of establishing personal jurisdiction, a plaintiff "cannot simply rest on the bare allegations of its complaint"). Because Koegel has not supplied admissible evidence to establish anything other than that he is an Arizona resident with whom Defendants contracted, he has not established that Defendants purposefully availed themselves of the Arizona forum and thus has failed to make a prima facie showing that this Court has personal jurisdiction over Defendants. *See Clair*, 2021 WL 3082562, at *5 ("Because a contract itself is insufficient to establish minimum contacts and Plaintiff is otherwise

unable to produce admissible evidence to establish personal jurisdiction, the Court finds that it lacks personal jurisdiction over Defendant . . . .").

Even if Koegel had supplied evidence to support his assertions, however, his argument would still fail because the contacts Defendants allegedly maintained with Arizona are insufficient to establish that they purposefully availed themselves of this forum. First, Koegel's suggestion that *his* performance of the Contract in Arizona (which is disputed by Defendants and not supported by the text of the Contract[2]), cannot support a finding of personal jurisdiction as to *Defendants*. As the Ninth Circuit has explained, "a plaintiff's performance [in the forum state] cannot give jurisdiction over a nonresident defendant; it is a defendant's activity that must provide the basis for jurisdiction." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 817–18 (9th Cir. 1988) (citation modified); *see also Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1165 (9th Cir. 2023) ("We have explained that 'the fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract.'" (quoting *Picot*, 780 F.3d at 1213)).

Second, soliciting demonstrations from, engaging in contractual negotiations with, engaging in video conferences and communications with, and paying a party who happens to live in Arizona are too attenuated to establish personal jurisdiction. Two Ninth Circuit cases, *Picot* and *Davis*, are particularly instructive. In *Picot*, the defendant performed "the majority of his work" under the contract outside the forum state, although that work included "seeking out investors and buyers in [the forum state]," and he made "two trips to [the forum state]" including one that lasted two weeks. 780 F.3d at 1212–13. Under those circumstances, which demonstrate more significant ties to the forum state—including physical presence—than those asserted here, the Ninth Circuit held that the defendant's conduct "did not create sufficient minimum contacts to subject him to personal jurisdiction." *Id.* at 1213. In *Davis*, the negotiations on the contract occurred remotely,

---

[2] The only performance mentioned in the Contract was to occur "on-site" in Texas. (Doc. 14-1 at 22 ("Licensor will provide initial on-side training to Licensee's employees . . . ."), 30 ("Scheduled ~45 on-site days  5 visits each day ~ 8 hours").)

- 7 -

1 the defendant's employees "engaged in several telephone calls, emails, and other
2 correspondence with individuals" in the forum state, and the defendant's employees took
3 two trips to the forum state, lasting three days and one week respectively, four years apart,
4 during the lengthy performance of the agreement. 71 F.4th at 1163–65. Under these
5 circumstances, which again demonstrate more significant contacts with the forum state
6 than those alleged by Koegel here, the defendant's interactions with the forum state were
7 deemed "too attenuated to establish minimum contacts." *Id.* at 1166.

8      The cases Koegel cites do not change this conclusion. In *Burger King*, the defendant
9 sought out to work with Burger King in Florida, and entered a 20-year relationship that
10 would have "continuing and wide-reaching contacts with Burger King" in Florida. 471
11 U.S. at 480. The Contract here does not demonstrate that the parties contemplated
12 longstanding and wide-reaching contacts with Arizona. Indeed, rather than demonstrate
13 any performance by Defendants in Arizona, it instead contemplates significant
14 performance by Koegel "on-site" with Defendants' employees in *Texas*. (Doc. 14-1 at 22,
15 30.) Likewise, *Cybersell* does not help Koegel because the personal jurisdiction analysis
16 in that case turned on the nature of internet advertising directed towards Arizona, which is
17 not relevant here, and the Ninth Circuit concluded that personal jurisdiction did not exist
18 where the defendant only passively advertised in Arizona. 130 F.3d at 419–20. Finally, in
19 *Walden¸* the Supreme Court held that the defendant's contacts with the forum state did not
20 support a finding of personal jurisdiction where, as here, the contacts were largely due to
21 the plaintiff being from that forum rather than intentional actions taken by the defendant.
22 *See Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in
23 a forum State based on his own affiliation with the State, not based on the 'random,
24 fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated
25 with the State" (citation omitted)).

26      For these reasons, Koegel has not made, and cannot make, a prima facie showing
27 that his contractual and business relationship with Defendants created sufficient contacts
28 with Arizona to establish personal jurisdiction.

### 2.     Initiating Arbitration in Arizona

Koegel also argues that "Defendants previously filed arbitration in Arizona, recognizing its jurisdiction," (*id.* at 11), and that Defendants "created continuing obligations through . . . initiating and participating in arbitration proceedings in Arizona." (*Id.* at 3.) Assuming for purposes of the specific jurisdiction analysis that Defendants purposefully availed themselves of the Arizona forum by initiating and participating in arbitration in Arizona, Koegel's argument fails because he cannot meet the "arising out of" requirement. *See Axiom Foods*, 874 F.3d at 1068 (explaining that to establish personal jurisdiction over a defendant who has "purposefully availed" itself of the "privileges of conducting activities in the forum state," the plaintiff must also show that "the claim [is] one which arises out of or relates to the defendant's forum-related activities"). Koegel's claims are based on Defendants' alleged conduct during the software implementation portion of the project, and their termination of the Contract. (*See* Doc. 1-1 at 13–52.) The Complaint only references the arbitration three times and does not set forth any facts indicating that Koegel has actionable claims related to the arbitration. (*See id.* at 13 ¶¶ 16–17, 51 ¶ 93). Because his claims do not arise out or relate to the arbitration, the Defendants' initiation of, and participation in, the Arizona arbitration do not establish specific jurisdiction over them.

Accordingly, Koegel has failed to satisfy his burden of establishing specific personal jurisdiction, requiring dismissal without prejudice under Rule 12(b)(2). *See Fiorani v. Berenzweig*, 441 Fed.Appx 540, 541 (9th Cir. 2011) ("[D]ismissals for . . . lack of personal jurisdiction must be without prejudice." (citations omitted)).

### IV.    KOEGEL'S MOTIONS TO AMEND AND FOR PROTECTIVE ORDER

Koegel's request for leave to amend fails to comply with LRCiv. 15.1(a) because he failed to attach "a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect differs from the pleading which it amend, by bracketing or striking through the text to be deleted and underlining the text to be added." Accordingly, it is unclear what changes he proposes to make to his Complaint and how

they would impact the personal jurisdiction analysis set forth above. That his Motion for Leave to Amend does not address personal jurisdiction suggests that Koegel does not have any additional factual allegations bearing on personal jurisdiction with which to supplement his complaint. (Doc. 15.) *Cf. McGlinchy*, 845 F.2d at 818 (upholding denial of leave to amend where "[t]he deficiencies in the [plaintiff's] complaint [were] not cured by new facts or allegations presented . . . in the proposed Second Amended Complaint"). Because he has failed to comply with LRCiv. 15.1(a), and because it appears that amendment would be futile as to the question of personal jurisdiction, the Court will deny Koegel leave to amend.

Additionally, because the Court dismisses this matter under rule 12(b)(2), it declines to address Koegel's request for a protective order and will deny it as moot.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 8) is **granted**, and this matter is dismissed, without prejudice.

**IT IS FURTHER ORDERED** that Koegel's Motion for Leave to Amend Complaint (Doc. 15) is **denied.**

**IT IS FURTHER ORDERED** that Koegel's Motion for Protective Order (Doc. 15) is **denied**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this case.

Dated this 22nd day of September, 2025.

Honorable Sharad H. Desai
United States District Judge